No.: 14-51148
_____

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT
_____

MOHD N. REFAEI,

Plaintiff - Appellant,

versus

JOHN M. McHUGH, Secretary of Department of the Army,

Defendant – Appellee,
_____

_____

A DIRECT APPEAL OF A CIVIL CASE FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
_____

## APPELLANT'S INITIAL BRIEF

BROWNSTONE, P.A.
Matthew R. McLain, Esq.
Florida Bar No. 98018
201 North New York Avenue
Suite 200
P.O. BOX 2047
Winter Park, Florida 32790
407.388.1900 (O)
407.622.1511 (F)
*Counsel for Appellant*

## **CERTIFICATE OF INTERESTED PERSONS**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 28.2.4 of the Fifth Circuit Rules, the Defendant-Appellant, MOHD REFAEI, submits that the following listed persons and entities as described in the fourth sentence of Rule 28.2.4 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1)     Eduardo R. Castillo (Attorney for Appellee)

2)     Raymond D. Martinez (Prior Attorney for Appellant)

3)     John M. McHugh (Appellee)

4)     Matthew R. McLain (Attorney for Appellant)

5)     Frank Montalvo (U.S. District Court Judge)

6)     Mohd Refaei (Appellant)

7)     Miguel A. Torres (U.S. Magistrate Judge)

8)     Robert L. Sirianni, Jr. (Attorney for Appellant)

/s/ Matthew R. McLain, Esq.
Matthew R. McLain, Esquire

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

TABLE OF CONTENTS ................................................................................... iii

TABLE OF AUTHORITIES ...............................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ...............................................1

STATEMENT OF JURISDICTION.......................................................................1

STATEMENT OF THE ISSUES...........................................................................2

STATEMENT OF THE CASE.............................................................................3

SUMMARY OF THE ARGUMENT .....................................................................11

ARGUMENT ................................................................................................13

I.    THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT
      IN FAVOR OF MCHUGH, WHERE DR. REFAEI PRESENTED
      PRIMA  FACIE  CLAIMS  OF  DISCRIMINATION  AND
      SUFFICIENT EVIDENCE OF PRETEXT, WAS ERROR ........................13

      A. Standard of Review ..................................................................13

      B. Argument ...............................................................................13

II.   THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT
      IN FAVOR OF MCHUGH, WHERE DR. REFAEI PRESENTED A
      SUFICIENT CLAIM OF HOSTILE WORK ENVIRONMENT, WAS
      ERROR ........................................................................................22

      A. Standard of Review ..................................................................22

      B. Argument ...............................................................................23

III.  THE  DISTRICT  COURT'S  DISMISSAL  OF  DR.  REFAEI'S
      BREACH  OF  CONTRACT  CLAIM,  WHERE  IT  LACKED

JURISDICTION PURSUANT TO THE TUCKER ACT, WAS
ERROR ...............................................................................................27

   A. Standard of Review ...............................................................27

   B. Argument................................................................................28

CONCLUSION ................................................................................30

CERTIFICATE OF SERVICE ........................................................31

CERTIFICATE OF COMPLIANCE.................................................32

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................13, 22, 26

*Aryain v. Wal-Mart Stores of Texas, LP*, 534 F.3d 473 (5th Cir. 2008)..................24

*Brauniger v. Motes*, 260 Fed. Appx. 634 (5th Cir. 2007)........................................15

*Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343 (5th Cir. 2001) .................23

*Chichakli v. Szubin*, 546 F.3d 315 (5th Cir. 2008) ..................................................29

*C.R. Pittman Constr. Co. v. Nat'l Fire Ins. Co.*,
     453 Fed. Appx. 439 (5th Cir. 2011).........................................................15

*Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994)...................................14

*Dediol v. Best Chevrolet, Inc.* 655 F.3d 435 (5th Cir. 2011)...................................25

*E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393 (5th Cir. 2007)...............13, 22

*Franklin-Mason v. Mabus*, 742 F.3d 1051 (D.C. Cir. 2014) ...................................30

*Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332 (5th Cir. 1999) ......................27

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) ................................................23

*In re Canion*, 196 F.3d 579 (5th Cir. 1999) ...........................................................27

*Laxton v. Gap, Inc.*, 333 F.3d 572 (5th Cir. 2003) ........................................... 19-20

*Machinchick v. PB Power, Inc.*, 398 F.3d 345 (5th Cir. 2005) ...............................20

*McDonaled v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976) .........................16

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .............................*passim*

*Meinecke v. H & R Block of Houston*, 66 F.3d 77 (5th Cir. 1995) .........................14

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) .....................24, 27

*Palasota v. Haggar Clothing Co.*, 342 F.3d 569 (5th Cir. 2003) ...........................20

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)..........13, 20, 23

*Rogers v. EEOC*, 454 F.2d 234 (5th Cir. 1971) .....................................................23

*Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896-97 (5th Cir. 2002) ............14

*Septimus v. University of Houston*, 399 F.3d 601 (5th Cir. 2005) .........................24

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981) ..............14

*Vaughn v. Woodforest Bank*, 665 F.3d 632 (5th Cir. 2011) ...................................19

*Williams v. General Motors Corp.*, 187 F.3d 553 (6th Cir. 1999) .........................25

## Other Authority

28 U.S.C. § 1291 .......................................................................................................1

28 U.S.C. § 1331 .......................................................................................................1

28 U.S.C. § 1343 .......................................................................................................1

28 U.S.C. § 1491 ..................................................................................1, 28

42 U.S.C. § 1981 ...................................................................................1, 3

42 U.S.C. § 2000 ...............................................................................14, 23

FED. R. APP. P. 4 ......................................................................................1

FED. R. APP. P. 26 .................................................................................... ii

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant believes the issues on appeal can be assessed on the briefs and does not require oral argument.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff-Appellant Refaei Mohd ("Dr. Refaei") alleged violations of Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981, and the Age Discrimination in Employment Act of 1967.  In regards to the breach of contract claim, Dr. Refaei asserts the Court of Federal Claims, not the district court, had exclusive jurisdiction. 28 U.S.C. § 1491(a)(1).

This Court has jurisdiction over the appeal of the Final Judgment pursuant to 28 U.S.C. § 1291.  The August 20, 2014, Final Judgment in favor of the Defendant-Appellee John M. McHugh, Secretary of Department of the Army ("McHugh"), disposed of the entire case.  Dr. Refaei timely filed her Notice of Appeal on October 15, 2014, fifty-six days after the entry of the Final Judgment.  FED. R. APP. P. 4(a)(1)(B). This appeal follows.

1

## STATEMENT OF THE ISSUES

1. Where Dr. Refaei established prima facie claims of discrimination and further showed McHugh's proffered reason for termination was pretextual, was it error for the district court to grant McHugh's motion for summary judgment?

2. Where Dr. Refaei presented a prima facie claim of hostile work environment, was it error for the district court to grant McHugh's motion for summary judgment?

3. Did the district court err when it dismissed Dr. Refaei's breach of contract claim with prejudice, where the district court lacked jurisdiction to consider the claim pursuant to the Tucker Act?

## STATEMENT OF THE CASE

Dr. Refaei filed his original complaint against McHugh on June 18, 2013, after the Equal Employment Opportunity Commission, on March 26, 2013, issued a Final Agency Decision concluding that no discrimination occurred. (ROA. 6-20, 261-64, 275-295). In the Complaint, Dr. Refaei alleged McHugh violated Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981, and the Age Discrimination in Employment Act of 1967 by discriminating against him on the basis of his national origin, religion, and age, and by retaliating against him and creating a hostile work environment. (ROA. 6-20). Additionally, Dr. Refaei sought relief for breach of contract, intentional infliction of emotional distress, and defamation. (ROA. 6-20). McHugh filed a motion to dismiss Dr. Refaei's breach of contract, intentional infliction of emotional distress and defamation claims. (ROA. 43-52). Dr. Refaei withdrew his claims of intentional infliction of emotional distress and defamation, while the district court dismissed breach of contract claim with prejudice. (ROA. 74, 120).

On June 13, 2014, McHugh moved for summary judgment on the remaining claims. (ROA. 147-67). Following Dr. Refaei's Response, McHugh's Reply, Dr. Refaei's response to McHugh's Reply, and McHugh's Reply to Dr. Refaei's Response, the district court issued its order granting summary judgment in favor of

3

McHugh on August 20, 2014, and entered Final Judgment on the same day. (ROA. 444-56, 486-94, 495-503, 519-29, 532-35, 537-66).  This appeal follows.

## A. Statement of the Facts

Dr. Refaei was born in the United Arab Emirates in 1965. (ROA. 195).  He became a naturalized United States citizen in the beginning of January 2001. (ROA. 195).  Dr. Refaei has practiced Muslim throughout his life. (ROA. 195).  In the Summer of 2008, Dr. Refaei was accepted into a medical residency program with the Department of Veteran Affairs, El Paso Healthcare System, Patient Care Services at the Department of Internal Medicine, William Beaumont Army Medical Center ("WBAMC"). (ROA. 207).  WBAMC provided a three-year internal medicine residency program with three different levels, PGY-1, PGY-2, and PGY-3. (ROA. 379).  To successfully complete the residency program, a resident was required to successfully complete each level.  According to the job description, the three levels are described below:

> As an Internal Medicine Intern, PGY-1, I am expected to be responsible for providing primary medical care for inpatients and outpatients with supervision.  Responsible for increasing personal knowledge of the broad field of Internal Medicine through attendance and participation in conferences, lectures and patient rounds, as well as through systematic self-study programs.  Provide supervision and teaching to assigned medical students on inpatient wards.  Responsible for proper timely documentation of patient records under my care.  As an Intern, I will participate in nine (four week) rotations of ward experience, and four rotations of elective experience in a subspecialty service clinic.

As an Internal Medicine Resident, PGY-2, I am responsible for providing primary medical care for inpatients and outpatients with direct & indirect supervision. Responsible for supervision of interns and medical students. Responsible for increasing personal knowledge of the broad field of Internal Medicine through attendance and participation in conferences, lectures and patient rounds, as well as through systematic self-study programs. Responsible for proper timely documentation of patients' records and concise medical record dictation. I will prepare and present one medical resident lecture.

As an Internal Medicine Senior residence, PGY-3, I am expected to be responsible for providing inpatient and outpatient medical care with minimal supervision. Responsible for increasing my personal knowledge of the broad field of Internal Medicine through attendance and participation in conferences, lectures and patient rounds, as well as through systematic self-study programs. Provide supervision, leadership and teaching to assigned medical students, interns and junior residents on the wards. Prepare and present one medical resident lecture. Responsible for timely documentations of patient's records under my care.

(ROA. 379). Dr. Refaei completed the PGY-1 and PGY-2 levels, but was terminated during the final level, PGY-3, just months before graduation. (ROA. 395). Dr. Refaei asserts the termination was a result of continued unconstitutional discrimination by Dr. Michael Cole, a supervisor, on the basis of his national origin, religion and age. (ROA. 6-20). Additionally, Dr. Refaei alleged Dr. Cole created a hostile work environment. (ROA. 6-20).

Dr. Refaei began the three-year residency program in 2008, and initially struggled as a PGY-1 resident. In September of 2008, the education committee at WBAMC placed him on Program Level Remediation, a non-punitive program focused on improving deficiencies. (ROA. 381-83). In November of 2008, while

the education committee noted that Dr. Refaei generally had "a good attitude about improving" and had "been frequently noted to seek out feedback," it found he had continued deficiencies that necessitated a probationary period of 90 days. (ROA. 385-88). The probationary period was later extended 90 days in March of 2009 because, although Dr. Refaei "showed considerable improvement," there were still certain deficiencies that needed to be addressed. (ROA. 392-93). In June of 2009, the education committee unanimously voted that Dr. Refaei had successfully completed probation and afforded him adequate time to complete the PGY-1 level. (ROA. 395).

After Dr. Refaei successfully completed probation and just before Dr. Refaei was to be promoted to a PGY-2 level resident, Dr. Cole told Dr. Refaei, "You may make it to your second year of residency, but you may not make it to your third year." (ROA. 11). Dr. Refaei asserted Dr. Cole's comment was motivated by national origin, religion, and age discrimination. (ROA. 6-20). In fact, Dr. Refaei claimed Dr. Cole discriminated against him from the beginning of the residency program, and provided the district court with two discriminatory comments made by Dr. Cole. (ROA. 10, 212-13). First, during rotations, Dr. Cole would tell Dr. Refaei to start taking Aricept, a medication used to treat symptoms of Alzheimer's disease such as memory loss and mental changes. (ROA. 10, 241). Second, when Dr. Refaei, other residents and doctors, and Dr. Cole were watching an episode of Jeopardy that

6

made mention of a 5th century Muslim physician, Dr. Cole commented "Muslim Physician? That's something new." (ROA. 12, 240-41). Dr. Refaei believed Dr. Cole's comment insinuated that he thought Muslims were not meant to be physicians. (ROA. 12). Dr. Refaei believed Dr. Cole's discrimination based on national origin was evident by his collective "behavior towards people of foreign national." (ROA. 243).

Dr. Refaei alleged that Dr. Cole's discrimination motivated Dr. Cole to create a hostile work environment and to make it his goal to have Dr. Refaei terminated before completing the residency program. (ROA. 11-12). For instance, during rotations, Dr. Cole would consistently berate him with demeaning comments such as "bonehead," "liar," and confabulator. (ROA. 10, 241-43). The comments caused other attendings in the residency program to treat Dr. Refaei unfairly and spread similar defamatory comments throughout the residency program. (ROA. 10). Dr. Cole also treated him differently from other dissimilar residents with regards to the United States Medical Licensing Examination when, after failing the examination once, Dr. Cole harassed and threatened to have Dr. Refaei fired if he did not pass the examination immediately. (ROA. 11). Dr. Cole further interjected with and influenced faculty to give Dr. Refaei low evaluations in their clinics or blocks. (ROA. 12, 206). Dr. Cole was also responsible for failing him in two blocks. (ROA. 12). Specifically, as a PGY-1 level resident, Dr. Refaei took 10 blocks and three

7

continuity clinics. (ROA. 12, 212).   Dr. Refaei failed two blocks as a PGY-1 level resident.  Dr. Cole was responsible for failing him in one of the blocks. (ROA. 12, 212).  As a PGY-2 level resident, Dr. Refaei took 13 blocks and two continuity clinics.  Dr. Refaei failed one block as a PGY-2 level resident.  Dr. Cole was responsible for the failure. (ROA. 12). Dr. Cole was also responsible for having Dr. Refaei placed on remediation as a PGY-2 level resident, which Dr. Refaei successfully completed. (ROA. 215, 400-01).

Dr. Cole's discriminatory actions caused Dr. Refaei to be placed on thin ice with WBAMC, and in July of 2011 Dr. Cole recommended to the education committee that Dr. Refaei be placed on academic probation as a PGY-3. (ROA. 403-06).  Dr. Cole's recommendation came shortly after Dr. Refaei's PGY-3 mid-year summative performance evaluation suggested "there is currently enough evidence from multiple evaluators that he is performing well enough to graduate as expected in Dec[ember] if he completes his written requirements & scholarly activity requirements." (ROA. 403).  Dr. Cole's recommendation for probation was spurned by the report that Dr. Refaei gave "a very poor sign out to the oncoming night resident and failed to check on the progress of his intern's work that day before going home." (ROA. 403).  Dr. Cole suggested a comprehensive list for conditions of probation recommended by Dr. Cole, which the education committee "modified minimally" and then adopted. (ROA. 410). Unlike the prior periods of probation, Dr.

Cole recommended that failure to comply with "any ONE" condition would "be grounds to pursue termination." (ROA. 404). Dr. Refaei contested being placed on probation. (ROA. 226-29).

Two days after receiving the formal notice of probation, Dr. Cole reported Dr. Refaei's involvement in an incident which led to Dr. Refaei's termination. (ROA. 230, 416-17). According to the recommendation for termination written by Dr. Cole:

> On the night of 29 July 2011 (~0400 30 July 2011) there was a call for the Rapid Response Team (RRT) to assess and treat a patient on the 9th floor. The patient had been repeatedly removing his BiPAP mask due to agitation, presumably because of a combination of hypoxic air hunger and hypercarbic respiratory failure with resultant delirium. At the time of the RRT, the patient was noted (documented) to have an SaO2 in the 60% range with a heart rate in the 20's. The RRT administered lorazepam and placed the patient back on BiPAP, presumably with some normalization of his vital signs, although he had a dramatic respiratory acidosis on his arterial blood gas analysis. The patient was not transferred to the intensive care unit (ICU) and remained on the ward. Additionally, the attending of record was not notified of this significant change in his patient's status and the case was not discussed or reviewed with the ICU attending. Although you did not document anything in this patient's record during that period of time, a note from one of the ward nurses makes it clear that you were very much involved in making the decision to have that patient remain on the 9th floor. The intern that wrote the cross-cover note documenting the events of the RRT did not include a large number of things that are needed for such a note/event and there is no evidence you coached or guided her in any manner. The patient was subsequently transferred to the ICU appropriately after the day team took signout from you and evaluated the patient themselves. Feedback was given to you electronically by Dr. Cole the following day via email (see attachment).

(ROA. 416). Dr. Cole's recommendation to terminate cited Dr. Refaei for violating two conditions of probation: the failure to (1) continue to provide appropriate AND adequate documentation on all clinical notes including the documentation of the "Assessment and Plan" sections that is representative of a PGY3 level resident and (2) demonstrate readiness to take a leadership role (e.g. attending physician) by accomplishing all of the above while teaching junior trainees. (ROA. 416). Based on Dr. Cole's recommendation, the education committee unanimously voted to pursue termination. (ROA. 419).

After a hearing, in which Dr. Refaei contested the allegations presented by Dr. Cole, the education committee recommended Dr. Refaei be terminated from the residency program only months before his expected completion date for the program. (ROA. 230-38, 428). While the committee's vote was unanimous, Dr. Refaei could hear Dr. Cole yelling during the committee's deliberations. (ROA. 238). The Deputy Commander for Clinical Services endorsed the recommendation for termination. (ROA. 238). Dr. Refaei appealed the determination on the grounds of several due process violations including (1) the failure of the director to prepare a summary of the proceedings and recommendation and forward it to the deciding authority within one working day following adjournment of the due process proceeding, (2) the failure of the committee to allow Dr. Refaei to review all documents before the committee, (3) the failure to properly notice Dr. Refaei of the

decision to be placed on probation, and (4) the extreme variance between Dr. Cole's written recommendation for termination and his oral presentation to the committee. (ROA. 430-31, 433).

## SUMMARY OF THE ARGUMENT

The district court erred in granting summary judgment to McHugh on Dr. Refaei's religion, national origin, and age discrimination claims. First, Dr. Refaei presented a prima facie case of discrimination. There is no dispute that Dr. Refaei satisfied the first three prongs of the *McDonnell Douglas* analysis. Dr. Refaei's affidavit was sufficient to create a dispute as to a material fact about whether he was replaced either by someone outside of his protected class or was treated less favorably than other similarly situated employees outside of the plaintiff's protected class. It was error to find no dispute fact. Second, although McHugh proffered a non-discriminatory reason for termination, Dr. Refaei presented sufficient evidence of pretext that, when viewed in the light most favorable to him, created a sufficient dispute of material fact requiring the fact-finder, and not the district court, to resolve. The district court's order should be vacated and the case remanded for trial.

The district court erred in granting summary judgment to McHugh on Dr. Refaei's hostile work environment claim. Dr. Refaei presented sufficient allegations that are for the trier of fact to resolve, and not properly disposed of on summary judgment. This court must reverse the district court's order granting defendant's motion for summary judgment, as there are disputes of material fact that must be resolved by a fact finder. McHugh was not entitled to judgment as a matter of law.

The district court erred in dismissing Dr. Refaei's breach of contract claim with prejudice. Pursuant to the Tucker Act, such a breach of claim against the United States alleging damages over $10,000 is in the exclusive jurisdiction of the Court of Federal Claims. Accordingly, the district court did not have the jurisdiction to dismiss Dr. Refaei's breach of contract claim with prejudice. The district court's order should be vacated, and the matter remanded with instructions to transfer the claim to the Court of Federal Claims.

## ARGUMENT

**I. THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT IN FAVOR OF MCHUGH, WHERE DR. REFAEI PRESENTED PRIMA FACIE CLAIMS OF DISCRIMINATION AND SUFFICIENT EVIDENCE OF PRETEXT, WAS ERROR.**

### A.    Standard of Review

"This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court." *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). Like the trial court, this Court must "refrain from making credibility determinations or weighing the evidence." *Id.* at 398. This Court views all of the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *Id.* Summary judgment is inappropriate if evidence is such that disputed issues and inferences could be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986). Moreover, defendant cannot credit the evidence of the movant except to the extent that it is evidence that is so clear that the jury is required to believe it. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000).

### B.    Argument

Title VII provides that "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color,

14

religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In *McDonnell Douglas* and *Burdine*, the Supreme Court outlined the burden-shifting framework generally applicable in employment discrimination cases brought under Title VII. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Where there is no direct evidence of discrimination, a plaintiff must initially establish a prima facie case from which a discriminatory motive may be inferred, thus creating a rebuttable presumption of intentional discrimination. *See Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994). Where the facts involve a straightforward discrimination discharge, an employee may establish a prima facie Title VII case by showing that: (1) he belongs to a protected class, (2) he was qualified for the job or performed his job satisfactorily, (3) he suffered an adverse employment action, and (4) he was replaced by someone outside the protected class or his employer treated similarly-situated employees outside his classification more favorably. *McDonnell Douglas*, 411 U.S. at 802. The *McDonnell Douglas* analysis similarly applies to ADEA age discrimination claims. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896-97 (5th Cir. 2002).

## 1. Prima Facie Case

In regard to Dr. Refaei's national origin, religion and age discrimination claims, the district court accepted that Dr. Refaei established the first three prongs

of the *McDonnell Douglas* burden shifting analysis.  The district court, however, found Dr. Refaei failed to demonstrate he was replaced either by someone outside of his protected class or was treated less favorably than other similarly situated employees outside of the plaintiff's protected class.  While the district court noted Dr. Refaei alleged doctors outside his protected class underperformed, yet successfully completed the program, it determined the allegation unsatisfactory because "none of these residents were deposed and in an attempt to authenticate such information, Plaintiff merely asserts he has direct personal knowledge of their performance." (ROA. 552-53).

The district court committed reversible error when it ruled Dr. Refaei's affidavit insufficient to create an issue of fact precluding summary judgment because an affidavit, even based on personal knowledge, is sufficient to create a genuine issue of material fact and does not lose its character as competent evidence simply because the witness is associated with a party. *See C.R. Pittman Constr. Co. v. Nat'l Fire Ins. Co.*, 453 Fed. Appx. 439, 443 (5th Cir. 2011) ("an affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving."); *Brauniger v. Motes*, 260 Fed. Appx. 634, 636 (5th Cir. 2007) (affirming the admission of two "self-serving" affidavits of the defendant's employees in an age discrimination case, which affidavits were used in connection with the district court's granting of summary judgment to the

16

defendant, because "although [the plaintiff] dismisses the affidavits as containing merely 'self-serving' assertions, he offers no specific reason to doubt that the affidavits are based on [the affiants'] personal knowledge regarding the conduct of their own investigations and employment decisions").

In analyzing a selective discipline case, the Supreme Court has held that "precise equivalence in culpability between employees is not the ultimate question: as we indicated in *McDonnell Douglas*, an allegation that other employees involved in acts against (the employer) of comparable seriousness" but who are not discharged is sufficient to support a discriminatory/retaliatory discharge claim. *See McDonaled v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n. 11 (1976). Here, Dr. Refaei's affidavit, in which he asserts his personal knowledge, creates a factual dispute which precluded summary judgment. In particular, Dr. Refaei provided several dissimilar residents who underperformed, but were permitted to complete the program:

**Iliana Tiscareno:**
a) Low In Training Examination (ITE) scores throughout the 3 years residency
b) Multiple failure attempts at USMLE step III well into her third year of residency.
c) Finally, failed the American Board of Internal Medicine (ABIM) after graduation.
d) She was never placed on probation or extension of residency.
e) Her management of the ward team became a Morbidity & Mortality (M&M) morning report case under supervision of Dr. Lukasik. In that case they discharged a Deep Vein Thrombosis (DVT) patient home

without the anticoagulation medication which predisposes the patient to fatal pulmonary embolism.

f) She had very poor procedural skills that once in an ICA rotation she caused a patient bleed into his lungs after she performed a thoracentesis.

g) Still after 3 years has not passed the ABIM examination.

### Robert Gayle-(M)(White)

a) It is well known that he is a very close friend of Dr. Cole. He prescribed a controlled substance medication for J. Pena co-military intern without having the license.

b) Low In Training Exam (ITE) scores and subsequently failed the ABIM examination after graduation.

c) Participated in the conspiracy incident of June 9th to place me on probation as a conspirator with Dr. Cole by sending a false report that I overused the intern and provided poor signout.

d) For 2 consecutive years became resident of the year just by having a close friendship with Dr. Cole.

### Ryan DeCort-(M)

a) Failed USMLE step III and a few months had gone by into the beginning of his PGY2 until he passed it during which time he did not do any scheduled rotations. In the residency handbook if a military intern has not passed step III before the beginning of his second year he/she will be placed on leave of absence until 90 days at which time if step III is still not passed then would be subjected to termination from the residency program.

b) Dr. Cole was very attentive to this resident. I was placed on probation because the 9th of June, 2011 Dr. DeCort said he could not handle 5 new patient admits and I called the second intern to take his place.

c) Subsequently he stayed until 9 pm that night to show that I over worked him. Based on ACGME each intern can receive 5 new patients on the call day. Dr. Cole had told Dr. Cory Lundberg he would fire me on June the 10th 2011.

d) Later, Dr. Lukasik told me that Dr. Hertz has instructed Dr. Cole to place me on probation and later termination. That's why my

termination letter was posted before having had any change to exercise my probation terms.

**Michael Romeo-(M)**

a) Failed USMLE step III and a few months had gone by into the beginning of his PGY2 until he passed it during which time he did not do any scheduled rotations for several months.  However, he was not extended or delayed progression into PG2 year despite the fact that he needed step III in order to proceed to the second year.  In the residency handbook if a military intern has not passed step III before the beginning of his second year he/she will be placed on leave of absence until 90 days at which if step III is still not passed then would be subjected to termination from the residency program.

**Stephanie-NG-(M)**

a) Low scoring In Training Examination (ITE) scores through the 3 years of residency.

b) During a cardiology rotation I noticed she had not checked on a patient's cardiac enzymes throughout the night call.  Several hours had passed before I arrived in the morning and started the patient on the anticoagulation.

c) On the same cardiology rotation when she was the night resident, I arrived in the morning to receive the pager and relieve her from her responsibilities. She told me that she interviewed a patient with Aortic Dissection in the ER but the patient did not want to be admitted so she left him there.

d) Aortic Dissection is a medical emergency that could cause death at any minute.  Thus, I found the patient and made arrangement to transfer him to CCU.  The program required her to apologize to him in the morning report and she received the award as the "best student teacher."

**Ozanick (Transitional)**

a) He did not answer a pager call while he was on call when a patient on the 9th floor of the ward coded.  The patient died.  There were no actions taken against Dr. Ozanick.  He was promoted to dermatology residency

19

in San Antonio military hospital (BAMC). The nurse in charge was LT Salzar.

**Tony Garcia**

a) Had five M&M (Morbidity and Mortality) cases for presentation but was able to graduate despite that one of M&M cases ended up in severe patient outcome.

(ROA. 470-71). Accordingly, Dr. Refaei's affidavit provided sufficient proof that similarly situated persons were treated more favorably than he was. The district court erred by determining Dr. Refaei failed to establish a prima facie case.

## 2. Pretext

Once the employee presents his prima facie case, the employer has a burden of production to proffer a legitimate, nondiscriminatory reason for the adverse employment action. Here, McHugh argues its reason for termination was Dr. Refaei's failure to perform competently as an independent practitioner in the field of internal medicine. (ROA. 157).

If the employer satisfies this very low burden, the employee is required to demonstrate that the employer's explanation is really pretext for discrimination. *See Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). A plaintiff may show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.' " *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). An employer's burden of demonstrating

pretext is satisfied where there is evidence "challenging the substance" of the employer's rationale for the adverse action, together with "evidence that undermines the overall credibility of [the employer's] proffered justification. *Laxton*, at 580. The key word in this paradigm is "challenging," not actually demonstrating.

Also, on pretext, *Reeves*, 530 US at 146-147 clarified that a prima facie case of discrimination and sufficient evidence to show the falsity of the employer's explanation for the employee's termination (or adverse action) is sufficient to render a verdict for the employee. Specifically, *Reeves* speaks to it being "permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." The raw, factual "reason" for the adverse action is irrelevant. Relevant is the context in which the rationale was formulated, the timing of it, and the explanation for the adverse action. Accordingly, "the establishment of a prima facie case and evidence casting doubt on the veracity of the employer's explanation is sufficient to find liability." *See Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003) (citing *Reeves*, 530 US at 147). Another court has defined pretext evidence as "evidence tending to show that the reason offered by the defendant is pretext for discrimination." *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).

Deciding on the probative value of circumstantial evidence necessarily requires drawing inferences and this is not the function of the district court at the

summary judgment stage.  At the very least, those inferences should have been drawn in Dr. Refaei's favor, which the district court clearly did not do.   Here, Dr. Refaei adduced sufficient evidence to create a genuine issue of material fact regarding whether McHugh's purported reasons for termination his employment were pretextual.  First, there is, on this record, a clear dispute concerning the circumstances surrounding the incident leading to Dr. Refaei's termination.   In addition to Dr. Refaei's own assertion, a separate faculty member, Dr. Imuro, believed Dr. Refaei acted appropriately under the circumstances and that he should not have been held responsible for the incident.   Dr. Imuro concluded that the triggers for probation and termination hearings were "over stretched and alarming." (ROA. 475-80).  While Dr. Cole and the committee believed otherwise, the fact-finder, and not the district court, must resolve this dispute because the dispute over Dr. Refaei's actions goes to the ultimate issue in the case.  It was improper for the district court to draw the inference in favor of McHugh and ignore the record evidence in favor of Dr. Refaei.  Second, Dr. Refaei provided comparators whose performance was significantly more deficient, but were permitted to complete the program. Finally, Dr. Refaei demonstrated the timing of the termination suggests pretext.  From the onset, Dr. Cole discriminated against Dr. Refaei, and made it his goal to see that Dr. Refaei did not complete the residency program, "You may make it to your second year of residency, but you may not make it to your third year."

22

After Dr. Cole received evidence suggesting Dr. Refaei would graduate from the residency program in a few months, he took action to have Dr. Refaei placed on probation and then terminated. Accordingly, although McHugh proffered a non-discriminatory reason for termination, Dr. Refaei presented sufficient evidence of pretext.

Based upon the record evidence in this case, and viewing the facts in the light most favorable to Dr. Refaei, there is a sufficient dispute of material fact requiring the fact-finder, and not the district court, to resolve. It cannot be said, on this record, that the case is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The district court's order should be vacated and the case remanded for trial.

## II. THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT IN FAVOR OF MCHUGH, WHERE DR. REFAEI PRESENTED A SUFICIENT CLAIM OF HOSTILE WORK ENVIRONMENT, WAS ERROR.

### A. Standard of Review

"This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court." *WC&M Enterprises, Inc.*, 496 F.3d at 397. Like the trial court, this Court must "refrain from making credibility determinations or weighing the evidence." *Id.* at 398. This Court views all of the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *Id.* Summary judgment is inappropriate if evidence is such

that disputed issues and inferences could be resolved in favor of either party. *Anderson*, 477 U.S. at 249-52. Moreover, defendant cannot credit the evidence of the movant except to the extent that it is evidence that is so clear that the jury is required to believe it. *Reeves*, 530 U.S. at 150-51.

### B.    <u>Argument</u>

Title VII makes it "an unlawful employment practice to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2 (a) (1). The phrase "terms, conditions, or privileges of employment" includes requiring people to work in a discriminatorily hostile or abusive environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). Title VII has long been a vehicle by which employees may remedy discrimination they believe creates a hostile work environment. *Rogers v. EEOC*, 454 F.2d 234 (5th Cir. 1971). Indeed, in *Rogers*, this Court was the first to recognize Title VII as a cause of action available to address a hostile work environment.

To establish a prima facie case of hostile work environment, the plaintiff must show (1) that she belongs to a protected class; (2) that the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on the protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in

question and failed to take prompt remedial action. *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 353 (5th Cir. 2001) (abrogated on other grounds). To affect a term, condition or privilege of employment, the harassing conduct must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Aryain v. Wal-Mart Stores of Texas, LP*, 534 F.3d 473, 479 (5th Cir. 2008).

The work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *Id*. at 479.

Accordingly, determining whether a hostile work environment exists takes into account the totality of the circumstances, including such factors as: (1) the frequency of the conduct; (2) its severity; (3) the degree to which the conduct is physically threatening or humiliating; and (4) the degree to which the conduct unreasonably interferes with an employee's work performance. *See Septimus v. University of Houston*, 399 F.3d 601, 611 (5th Cir. 2005). Additionally, when "determining hostility, context matters." *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998). "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to

25

social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiffs position would find severely hostile or abusive."). *Id*. Consequently, "where individual instances of harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation." *Williams v. General Motors Corp.*, 187 F.3d 553, 563 (6th Cir. 1999).

In this case, Dr. Refaei presented sufficient evidence to create a question of fact whether a reasonable person would find Dr. Cole's actions created a hostile work environment. Particularly, Dr. Refaei provided two instances where Dr. Cole commented about his religion and age. First, Dr. Cole stated, while in the presence of several residents and Dr. Refaei, "Muslim physician? That's something new!" Second, Dr. Cole told Dr. Refaei he should take Aricept, a medication used to treat the symptoms of memory loss. Stemming from Dr. Cole's discriminatory animus, Dr. Cole repeatedly berated Dr. Refaei with demeaning comments such as "bonehead," "liar," and confabulator. These comments, which Dr. Cole stated openly, caused other faculty to treat Dr. Refaei unfairly and spread similar defamatory comments throughout the residency program.

A genuine issue of material fact exists when the evidence is such that, viewing the record as a whole, a reasonable jury could return a verdict for the non-moving party. *Dediol v. Best Chevrolet, Inc*. 655 F.3d 435, 439 (5th Cir. 2011). In reviewing

26

a summary judgment motion, the court must refrain from making credibility determinations or weighing the evidence, and must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Id.; see also Anderson*, 477 U.S. at 249-52 (noting that summary judgment is inappropriate if the evidence is such that disputed issues can be resolved in favor of either party.)

Clearly, Dr. Refaei's workplace at WBAMC is hostile when the supervisor, motivated by discrimination, continuously makes degrading remarks toward an employee and subjects them to undue ridicule. In addition to Dr. Refaei believing Dr. Cole's conduct was offensive, Dr. Imuro, an individual not subjected to Dr. Cole's offense conduct, found it offensive. This evidence establishes the conduct as being both objectively and subjectively offensive.

The discussion of objective offensiveness concerns a consideration of the totality of the circumstances. Here, the comments were frequent, pervasive and severe throughout Dr. Refaei's participation in the residency program. Dr. Refaei claims Dr. Cole's harassment and dissemination of false and negative information caused him to suffer both extreme emotional distress, damages his reputation, impeded his ability to advance in his career, and resulted in WBAMC breaching its contract with him and denied him the opportunity for advancement in his medical

career. On this issue, the facts are conflicting, and better suited for resolution by a trier of fact.

While hostile work environment jurisprudence is not designed to "prohibit all verbal or physical harassment in the workplace," *Oncale*, 523 U.S. at 77, the record supports Dr. Refaei's assertion that he endured a pattern of name-calling, discriminatory treatment based on his race and age and that it interfered with his interests. There is a genuine issue of material fact on this claim. These allegations are for the trier of fact to resolve and summary judgment was granted in error on Dr. Refaei's claim of hostile work environment based on race and age.

This court must reverse the district court's order granting defendant's motion for Summary Judgment, as there are substantial disputes of material fact that warrant a finding by a jury.

## III.   THE DISTRICT COURT'S DISMISSAL OF DR. REFAEI'S BREACH OF CONTRACT CLAIM, WHERE IT LACKED JURISDICTION PURSUANT TO THE TUCKER ACT, WAS ERROR.

### A.   Standard of Review

The lack of subject matter jurisdiction may be raised at any time. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999). This means it can be raised for the first time on appeal. *Id.* Finding that a court has subject matter jurisdiction is a legal determination that is reviewed de novo. *In re Canion*, 196 F.3d 579, 584 (5th Cir. 1999).

## B.     **Argument**

Under the Tucker Act, 28 U.S.C. § 1491(a)(1), the Court of Federal Claims has exclusive jurisdiction over contract claims against the United States where the claim exceeds $10,000:

> [t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

Accordingly, claims against the United States for amounts in excess of $10,000 founded on contracts with the United States must be brought in the Court of Federal Claims.

Here, Dr. Refaei brought a claim against the United States for breach of contract. Although not clear from the face of the complaint that Dr. Refaei sought damages greater than $10,000, Dr. Refaei alleged McHugh breached the contract when he was terminated on the basis of discriminatory acts which prevented him from, among other things, advancing in his medical career and earning between $97,000 and $225,000 and receiving $6,000 in pay for the remainder of the residency program. (ROA. 246-50).   In particular, Dr. Refaei requested the following relief:

Back pay and benefits;

Front pay and benefits;

Compensatory damages and punitive damages;

Plaintiff's Costs, including reasonable expert fees;

Attorney's fees;

Prejudgment and post-judgment interest accruing at the maximum rate allowed by law;

Such other and further relief as the court deems necessary, proper and equitable, general or specific, to which Plaintiff may show h[im]self to be justly entitled.

(ROA. 20).  It can be fairly inferred from the record that Dr. Refaei, an employed medical resident at the time and future certified doctor, presented a claim for more than $10,000 in damages. *Chichakli v. Szubin*, 546 F.3d 315, 317-18 (5th Cir. 2008) ("It is not clear from the face of the Complaint that Chichakli is seeking greater than $10,000 in damages.  Nonetheless, Chichakli alleged that the blocking order had the effect of destroying his business, freezing all of his accounts, depriving him of his automobile, and preventing use and collection of rents from rental property for over two years.  These allegations, along with Chichaki's failure to dispute the Government's allegation that his claim is in excess of $10,000, justify a finding that his claim is for more than $10,000.  It therefore falls under the exclusive jurisdiction of the Court of Federal Claims.").  Accordingly, the type of claim and amount of damages, caused Dr. Refaei's breach of contract claim to fall under the exclusive jurisdiction of the Court of Federal Claims.

Neither a court nor parties have the power to alter a federal court's statutory grant of subject matter jurisdiction. *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1056 (D.C. Cir. 2014). Therefore, the district court did not have the jurisdiction to dismiss Dr. Refaei's breach of contract claim with prejudice. The district court's order should be vacated, and the matter remanded with instructions to transfer the claim to the Court of Federal Claims. *Franklin-Mason*, 742 F.3d at 1058.

## CONCLUSION

Based upon the record, Dr. Refaei has established prima facie claims of discrimination and further, has shown through record evidence that McHugh's proffered reason was pretextual. The record demonstrates questions of material fact and the district court was wrong in finding the opposite. Similarly, the district court erred by holding that Dr. Refaei failed to establish a prima facie claim of hostile work environment. Finally, the district court lacked jurisdiction to dismiss Dr. Refaei's breach of contract claim. Based upon the foregoing, respectfully, this Court should reverse the district court's decision and remand this matter for trial and to transfer Dr. Refaei's breach of contract claim to the Court of Federal Claims.

DATED this 14th day of January, 2015.

Respectfully submitted,

/s/Matthew R. McLain, Esq.

Matthew R. McLain, Esquire
Florida Bar No. 98018
BROWNSTONE, P.A.
201 North New York Ave., Suite 200
P.O. Box 2047
Winter Park, Florida 32790
Telephone:  (407) 388-1900
Facsimile:  (407) 622-1511
matthew@brownstonelaw.com
*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was forwarded to all counsel of record on this 14th day of January, 2015, through the ECF system

/s/ Matthew R. McLain, Esq.

Matthew R. McLain, Esquire

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

      [X]      this brief contains 7,134 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

      [ ]      this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

      [X]      this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point, *or*

      [ ]      this brief has been prepared in a monospaced typeface using _____ with _____.

DATED this 14th day of January, 2015.

                    /s/Matthew R. McLain, Esq.
                    Matthew R. McLain, Esquire
                    Florida Bar No. 98018
                    BROWNSTONE, P.A.
                    201 North New York Ave., Suite 200
                    P.O. Box 2047
                    Winter Park, Florida 32790
                    Telephone:  (407) 388-1900
                    Facsimile:  (407) 622-1511
                    matthew@brownstonelaw.com
                    Counsel for Appellant